IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARIO MEDINA,** | : | |
|     **Plaintiff** | : | |
| | : | No. 1:20-cv-00866 |
|     v. | : | |
| | : | (Judge Kane) |
| **C.O. SNOWBERGER, et al.,** | : | |
|     **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case arising out of an incident in which pro se Plaintiff Mario Medina ("Medina") was pepper sprayed in his cell in the State Correctional Institution-Benner Township ("SCI-Benner Township"). Presently before the Court is Defendants' motion for partial summary judgment (Doc. No. 29), which seeks summary judgment as to all claims other than Medina's excessive force claim against Defendant Snowberger ("Snowberger"). For the following reasons, the motion will be granted.

**I.     BACKGROUND**

On May 29, 2020, Medina initiated this case through the filing of a complaint pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Defendants answered the complaint on September 9, 2020. (Doc. No. 14.) Medina subsequently moved for leave to amend, and the Court granted the request on January 26, 2021. (Doc. Nos. 17-18.) Medina's amended complaint was docketed later that day, naming as defendants Snowberger and three other SCI-Benner Township employees: Hammer, Shilling, and a John Doe Defendant. (Doc. No. 19.) In the amended complaint, Medina alleges generally that defendant Snowberger used excessive force when he pepper sprayed Medina on June 13, 2018, that the other defendants failed to protect Medina from the excessive force and failed to promptly provide him medical attention, and that the defendants retaliated against Medina for filing grievances relating to the incident. (Id.) Medina also alleges

that he has been denied parole in retaliation for filing grievances. (Id.) Defendants answered the amended complaint on February 3, 2021. (Doc. No. 20.)

On June 23, 2021, following the close of fact discovery, Defendants filed the instant motion for summary judgment, seeking summary judgment as to all claims other than Medina's excessive force claim against Defendant Snowberger.[1] (Doc. No. 29.) Defendants filed a statement of material facts and a brief in support of the motion on the same day. (Doc. Nos. 30-31.) Defendants argue that they are entitled to summary judgment as to the relevant claims both because Medina failed to exhaust administrative remedies and because the claims fail on their merits. (Doc. No. 31.) Medina filed a brief in opposition to the motion on August 2, 2021, but did not file a response to the statement of material facts. (Doc. No. 32.) Defendants filed a reply brief on August 3, 2021, and Medina then filed a sur reply on October 20, 2021. (Doc. Nos. 33, 36.) Medina did not obtain leave of the Court before filing the sur reply.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence would affect the outcome of the case under applicable substantive law. See id. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078

---

[1] Defendants do not seek summary judgment as to the excessive force claim because they acknowledge that there is a genuine issue of material fact as to whether Snowberger's discharge of the pepper spray was intentional or accidental. (Doc. No. 31 at 2 n.1.)

(3d Cir. 1992). An dispute of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson, 477 U.S. at 257; Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine dispute of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. See Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consol. Rail Corp., 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence that demonstrates the absence of a genuine dispute of material fact, the nonmoving party is required to go beyond his pleadings with affidavits, depositions, answers to interrogatories, or the like in order to demonstrate specific material facts that give rise to a genuine dispute. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case that it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex, 477 U.S. at 323; see also Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether a dispute of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. See White, 862 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in

his favor. See id. (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." See L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a pro se litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-cv-01384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (stating that pro se parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-cv-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (explaining that pro se parties must follow the Federal Rules of Civil Procedure).

### III.   STATEMENT OF MATERIAL FACTS[2]

On June 13, 2018, while collecting lunch trays, Defendant Snowberger discharged his pepper spray in the vicinity of Medina's cell. (Doc. No. 30 ¶ 12.) The pepper spray struck both

---

[2] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. See id. Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Unless otherwise noted, the background herein is derived from Defendants' Rule 56.1 statement of facts. (Doc. No. 30.) Plaintiff has not filed a response to Defendants' statement of material facts in compliance with Local Rule 56.1. Accordingly, the Court deems the facts set forth by Defendants to be undisputed. See Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; United States v. Alberto, No. 3:18-cv-01014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020).

Snowberger and Medina. (Id. ¶ 13.) Medina pressed the emergency button in his cell, alerting prison staff that he had been sprayed and requesting immediate medical care. (Id. ¶ 14.) Medina was seen in the prison's medical department approximately ten minutes after the incident occurred. (Id. ¶¶ 17-18.) At the time, his eyes were red, irritated, and watering. (Id. ¶ 19.) Prison staff treated him by applying a solution to his eyes. (Id. ¶ 20.) The June 13, 2018 incident was the only time that Snowberger had used physical force with Medina and the only time he used pepper spray on Medina. (Id. ¶¶ 22-23.) Medina also had never reported to Defendants Hammer or Shilling that he was afraid of Snowberger. (Id. ¶ 24.)

Medina filed two grievances with the prison alleging that Defendant Snowberger intentionally used pepper spray against him, the second of which Medina appealed through all stages of review. (Id. ¶¶ 30-33.) Medina filed an additional grievance on July 11, 2018, alleging that Defendant Hammer had intentionally lost Medina's boots. (Id. ¶ 35.) That grievance was dismissed, and Medina did not appeal. (Id. ¶¶ 36-37.) Medina was also denied parole at some point in time, although he was not sure whether this occurred before or after the incident involving Snowberger. (Id. ¶ 38.)

IV.     **DISCUSSION**

Defendants assert that they are entitled to summary judgment as to all claims other than the excessive force claim against Snowberger because Medina failed to exhaust administrative remedies as to those claims and because the claims fail on their merits. (Doc. No. 31.) The Court considers Defendants' arguments below.

   A.     **Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal

civil rights action.  See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues").  Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  See 42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  See Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007); see also Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The United States Court of Appeals for the Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement.  See Nyhuis v. Reno, 204 F.3d 65, 75-76 (3d Cir. 2000).  Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); see also Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

A prisoner's failure to exhaust may be excused if administrative remedies are unavailable to the inmate, as an inmate is only required to exhaust those administrative remedies that are "'capable of use' to obtain 'some relief for the action complained of.'" See Ross v. Blake, 578 U.S. 632, 642 (2016).  A grievance process is unavailable and may be deemed exhausted in three circumstances: "(1) when the remedy 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  See Hardy v. Shaikh, 959 F.3d 578, 584 (3d Cir. 2020) (quoting Ross, 578 U.S. at 643-44).  Although the burden to establish a plaintiff's failure to exhaust administrative remedies ordinarily lies with the defendants, it is the plaintiff's burden to establish that a grievance process was unavailable.  See Rinaldi v. United States, 904 F.3d 257, 268 (3d Cir. 2018) (citing Tuckel v. Grover, 660 F.3d 1249, 1253-54 (10th Cir. 2011)).

The prison grievance policy relevant to this case is the Pennsylvania DOC's Rule 804 ("DC-ADM 804").  See DCM-ADM 804, Department of Corrections, available at: https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf.  Under DC-ADM 804, a prisoner must first submit a timely written grievance for review by the Superintendent or regional grievance coordinator within fifteen days from the date of the incident.  See id.  DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "shall identify individuals directly involved in the events," and "shall specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law."  See id.  If the inmate wishes to receive compensation or "other legal relief normally available from a court" as a remedy for his

7

grievance, he "must request the specific relief sought in his/her initial grievance." See id. A response should be received within ten business days. See id. Next, the prisoner must submit a timely written appeal to an intermediate review level within ten working days. See id. Again, a response should be received within ten working days. See id. Finally, the inmate must submit a timely appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days, and the inmate should receive a final determination within thirty days. See id. To fully exhaust an issue or incident in accordance with DC-ADM 804, "[a]n inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process." See id.

Defendants argue that they are entitled to summary judgment because Medina failed to exhaust his administrative remedies with respect to all of his claims other than his excessive force claim. (Doc. No. 31 at 5-7.) Medina argues in response that Defendants are "using tactics out of the Pennsylvania Department of Corrections 'Grievance Officer Training Manual,' to defraud the DC-ADM 804 Grievance System." (Doc. No. 32 at 6.) Medina asserts that this manual teaches DOC employees to "avoid core topics in the initial grievance, to play upon words, to procrastinate, to manipulate, and [to] lie." (Id. at 7.) Medina argues that the manual violates the purpose of DC-ADM 804, which is to facilitate inmate grievances. (Id.) Medina does not dispute Defendants' contention that he failed to exhaust administrative remedies. (Id.)

Given Medina's failure to offer evidence to establish that he exhausted administrative remedies with respect to the relevant claims, Defendants reiterate in their reply brief that they are entitled to summary judgment. (Doc. No. 33 at 2-3.) Medina then argues in his sur reply that he attempted to file an initial grievance relating to the claims but that the grievance was never filed due to the actions of the John Doe Defendant and other DOC officials. (Doc. No. 36 at 3-5.)

Medina further asserts that he attempted to appeal this grievance but that he did not receive responses to his appeals. (Id. at 6-7.) Medina does not attach a copy of this grievance or any other documentation to support his account.

The record before the Court reflects that Medina filed a grievance complaining that Snowberger used excessive force during the pepper spraying incident and that Medina appealed this grievance through all stages of the prison grievance system. (See Doc. No. 30.) The record does not indicate that Medina exhausted administrative remedies with respect to any other claims raised in this case.

Although Medina's position regarding the issue of exhaustion is somewhat unclear, the Court liberally construes Medina's argument regarding the grievance officer training manual as an argument that the grievance policy under DC-ADM 804 was unavailable to him. The Court will reject this argument. It is the plaintiff's burden to establish that a prison grievance policy is unavailable, see Rinaldi, 904 F.3d at 268, and Medina has not offered any evidence to show that the administrative remedies at issue here were not "'capable of use' to obtain 'some relief for the action complained of.'" See Ross, 578 U.S. at 642. Medina appealed his excessive force claim against defendant Snowberger through all stages of appellate review under DC-ADM 804, and he has not explained why he was unable to do the same with respect to his other claims.

The Court will also disregard Medina's assertions in his sur reply brief that he attempted to file an initial grievance for two reasons. First, Medina did not raise this argument in his opposition brief, and arguments cannot be raised for the first time in a reply brief. See Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC, No. 1:21-cv-00658, 2021 WL 1740582, at *4 (M.D. Pa. May 3, 2021) (citing Interbusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 328 F. Supp. 2d 522, 529 (M.D. Pa. 2004)). Second, Medina did not seek leave of the Court

before filing his sur reply as required by the Local Rules.  See M.D. Pa. L.R. 7.7 (stating that no briefs may be filed after the moving party's reply brief "without leave of court").  Even if the Court accepted the argument made in Medina's sur reply as procedurally proper, however, the Court would still reject the argument on its merits, as Medina has not produced any documentary evidence to support his contention that he attempted to file an initial grievance and, in addition, he has not described the subject matter of the grievance.

Accordingly, because the record of this case reflects that Medina failed to exhaust his administrative remedies with respect to all claims other than his excessive force claim against Defendant Snowberger, the Court will grant Defendants summary judgment as to these claims. Having reached this conclusion, the Court will not address Defendants' alternative argument that the claims fail on their merits.

## V.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for partial summary judgment (Doc. No. 29).  An appropriate Order follows.